**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: August 3 2015**

_____
John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-32350 |
| | ) | |
| Piaj E. Hunter, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 14-3131 |
| | ) | |
| James Risk, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Piaj E. Hunter, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff James Risk ("Plaintiff") is an unsecured creditor in the underlying Chapter 7 case. On October 16, 2014, Plaintiff commenced this adversary proceeding, seeking a determination of the dischargeability of a debt owed to him by Defendant Piaj E. Hunter ("Defendant" or "Debtor"), the Chapter 7 debtor. Plaintiff asserts that the debt should be excepted from discharge under 11 U.S.C. §§ 523(a)(2), (a)(6), and (a)(11). [Doc. # 1]. Additionally, Plaintiff requests that the court enter an

order "denying [Defendant] a discharge" pursuant to 11 U.S.C. §§727(a)(2), (a)(4), and (a)(5). [Doc. # 1, p. 4].

Plaintiff obtained a judgment against Defendant in a breach of contract action, based upon an agreement wherein Plaintiff was to sell a house to Defendant and move the structure to lots owned by Defendant (collectively "the Property"). The breach of this contract created a debt in the amount of $16,458.07 that Plaintiff contends should be excepted from Defendant's discharge. Plaintiff further maintains that Defendant's actions, including the transferring of the title of the Property to his father, which his father then transferred back to the Defendant five days before the filing of his petition, and statements made by Defendant regarding his residing within the property, should prevent Defendant from being granted a discharge. [Doc. # 1, ¶¶ 29-32].

This proceeding is now before the court on Defendant's Motion for Summary Judgment Including Affidavit in Support ("Defendant's Motion") [Doc. # 13], Plaintiff's Motion for Summary Judgment and Memorandum in Support ("Plaintiff's Motion") [Doc. # 16], Defendant's Response to Plaintiff's Motion ("Defendant's Response") [Doc. # 19], and Plaintiff's Reply to Defendant's Response ("Plaintiff's Reply") [Doc. # 21].

Having considered the parties' respective arguments, for the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute. On March 3, 2009, Defendant obtained title, via quit claim deed, to Lots No. 69, 70, and 71 on Hancock Street, Sandusky, OH. [Doc. # 1, ¶ 10]. According to Defendant's Affidavit, the property was, and still is, encumbered by "several judgment liens and a real estate tax liability..." [Doc. # 13, p. 10]. Shortly after acquiring the Hancock Street real estate, Defendant entered into a contract with Plaintiff, whereby Plaintiff agreed to sell a house to Defendant and move the house to Defendant's lots. Defendant was to pay Plaintiff $25,000.00 for the relocation of the house to Defendant's lots, the installation of concrete footers for the foundation of the house, and for the house to be placed on the foundation. [Doc. # 16].

Pursuant to the signed hand-written contract, the survey work and building permits were to be obtained by Plaintiff. [Doc. 13-1, Def. Ex. A]. The contract also set forth a payment schedule, in which Defendant was to pay Plaintiff a cash deposit of $4,000.00 on March 11, 2009, and an additional $6,000.00 by May 30, 2009. Defendant would then pay Plaintiff $500.00 per month at a

2

0% interest rate until the balance of the $25,000 was paid off. [*Id.*].

According to Defendant's Affidavit, Plaintiff did not obtain the necessary permits to move the house to Defendant's land, so Defendant was forced to obtain the permits from the Erie County Engineer by paying $2,000.00 for them on his own. [Doc. # 13, p. 9, ¶ 7; Doc. # 13-1, Def. Ex. B]. Defendant also averred that he paid $280.00 for Plaintiff's insurance. [Doc. # 13, p. 9, ¶ 7]. After the house was moved to Defendant's property, Defendant alleges that Plaintiff did not complete the work set forth in the contract. Defendant claims, and the state court appears to have found, that Defendant had to pay a third party to lower the house and to move it to the foundation. [Doc. 13-1, Def. Ex. C, p. 10, ¶¶ 8 & 9]. Additionally, he asserts that Plaintiff failed to build the foundation walls, forcing Defendant to pay a third party to build the walls. [Doc. # 13, p. 9, ¶ 8]. These alleged breaches of the contract by Plaintiff were what Defendant claims caused him to stop making payments. [*Id.*].

Defendant's payments to Plaintiff totaled $7,000.00. [Doc. 14, p. 16, ¶ 4]. Plaintiff states in his Complaint that Defendant also cut up and sold steel beams belonging to Plaintiff that had a value of $4,000.00 [Doc. # 1, ¶ 14]. The state court held that the beams were cut up and sold by Defendant, and that "the Plaintiff is entitled to compensation for those beams in the amount of $4,000...." [Doc. # 14, p 16, ¶¶ 5-7; *Id.* at p. 17]. However, Defendant contends that he himself paid $1,200.00 to obtain the steel beams. [Doc. # 13, p. 9, ¶¶ 6, 9].[1]

On October 27, 2009, Plaintiff filed suit against Defendant for monetary damages in Erie County Common Pleas Court (Case No. 2009 CV 910) alleging breach of contract. [*Id.* at ¶ 10; Doc. # 13-1, Def. Ex. C, p. 9]. In the Erie County Common Pleas Court's Findings of Fact and Conclusions of Law, the court ruled that it appeared "clear from the testimony as well as the numerous exhibits provided by both parties that both parties [were] in breach of contract." [Doc. # 13-1, Def. Ex. C, p. 11]. The court ordered, based upon the amount of work completed by Plaintiff and the amount of expenditures paid for by Defendant, that Defendant was to pay Plaintiff $16,458.07 "for services rendered." [*Id.*] On March 28, 2013, a "Judgment Entry Adopting Magistrate's Decision" in the amount of $16,458.07 was entered. [Doc. # 13, p.9, ¶ 10; Doc. # 16, p. 2]. On April

---

[1]/ Plaintiff later filed criminal charges against Defendant, regarding Plaintiff's allegations that Defendant stole the steel beams. The charge was theft, a fifth-degree felony. An Erie County Grand Jury heard testimony on the matter and did not indict Defendant in the matter. Defendant states that this was because "the steel beams were mine." [Doc. # 13, pp. 9-10, ¶ 11; Doc. 13-1, Def. Ex. D].

3

22, 2013, Plaintiff filed a Certificate of Judgment against Defendant in the Erie County, Ohio Clerk of Courts in an attempt to lien the property. [Doc. # 16, Pl. Ex. A].

During the pendency of the civil case in the Erie County Common Pleas Court, Defendant quitclaimed title of the property to his father, Ozeal Hunter, Sr. (or "his Father") on December 11, 2012. [Doc. # 16]. The deed was recorded on December 12, 2012. Defendant states that the transfer "was made to protect any new investment of labor and materials by [his Father] that would potentially create new equity in the property." [Doc. # 13, p. 3]. As the judgment lien was against Defendant, the April 22, 2013 lien did not attach to the property that had already been transferred to his Father.

Plaintiff filed suit against Defendant on January 7, 2014,, again in the Erie County Court of Common Pleas, seeking to void the transfer of the property from Defendant to his Father. [Doc. # 13-1, Def. Ex. E]. On June 20, 2014, his Father transferred title to the property back to Defendant and five days later, on June 25, Defendant filed his Chapter 7 bankruptcy petition in this court. [Doc. # 1, ¶¶ 19-20].

Plaintiff filed his Complaint in this court on October 16, 2014. In his Complaint, Plaintiff contends that Defendant quitclaimed the property to his Father and then back to him "in order to allegedly gain protection under the Bankruptcy code." [Doc. # 1, ¶ 21]. Defendant contends that his Father transferred the property back to him in an effort to comply with Plaintiff's January 2014 lawsuit that sought to void the alleged fraudulent transfer. [Doc. # 13, p. 10, ¶ 15].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it

4

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting, B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

## II. Plaintiff's Claims and Motion for Summary Judgment

Plaintiff's Motion seeks summary judgment on two of the claims stated in the Complaint, specifically 11 U.S.C. §523(a)(2) and §523(a)(6). Plaintiff's Motion also discusses 11 U.S.C. §522(b)(3) and Ohio Revised Code §2329.66(A)(1), regarding Defendant claiming a homestead exemption under the federal statute. Each statute provides for an exemption in real property when that property is being used as the person's residence, and Plaintiff argues that the property located at 1817 Hancock Street, Sandusky, Ohio is not being used as Defendant's residence.

5

**A. Plaintiff's Objection to Claim of Exemption Pursuant to 11 U.S.C. §522(b)(3) and O.R.C. §2329.66(A)(1).**

Rule 4003(b) of the Federal Rules of Bankruptcy Procedure states that a party in interest, such as Plaintiff, may file an objection to a claim of exemption "within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." A bankruptcy court may extend the deadline for objecting to a claim of exemption, for cause. However, no such extension was requested or granted in this case.

In the underlying Chapter 7, Defendant/Debtor's 341 meeting was held and concluded on August 19, 2014. [Case No. 14-32350, Doc. # 9], and no amended schedules were filed. Neither the Chapter 7 Trustee, Plaintiff (who was properly listed as a creditor on Defendant's petition), nor any other creditors filed an objection to any Defendant/Debtor's claims of exemptions by the September 18, 2014 deadline. The above captioned adversary proceeding[2] was not filed until October 16, 2015. [Doc. #1]. As such, any objection to the claim of exemption must be denied as untimely under the authority of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992).

**B. Claim One: Exception to Discharge pursuant to 11. U.S.C. §523(a)(2).**

Plaintiff seeks a determination that the debt owed to him by Defendant in connection with the breach of contract and the events leading up to and following the sale and moving of the house is nondischargeable for fraud under 11 U.S.C. §523(a)(2)(A)[3]. Exceptions to the discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010).

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services. . . .

---

[2]/ Although Rule 4003(b) states that a party in interest may file an "objection" to a claim of exemption, the Sixth Circuit Court of Appeals has treated a timely filed adversary complaint as an objection to a claim of exemption. *See*, *In re Grosslight*, 757 F.2d 773, 777 (6th Cir. 1985). The problem here is that the "objection" was not filed within 30 days after the conclusion of the §341 meeting. [Case 14-32350, Doc. ## 9, 20].

[3]/ Plaintiff's Complaint [Doc. # 1] cites only to 11 U.S.C. §523(a)(2). In Claim One, the Complaint uses the language "false pretenses, a false representation, and/or actual fraud" which is found in 11 U.S.C. §523(a)(2)(A) as opposed to the language contained within §523(a)(2)(B). Plaintiff's Motion for Summary Judgment also seeks judgment under §523(a)(2)(A) and not §523(a)(2)(B). As such, the court will focus on a §523 claim under (a)(2)(A).

6

to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." In order to except a debt from discharge under this section due to false pretense, false representation, or actual fraud, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Under §523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Vogt v. Hastings (In re Hastings)*, 2015 WL 1598055 at *4, 2015 Bankr. LEXIS 1119 at *10 (Bankr. N.D. Ohio April 6, 2015)(*quoting*, *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)); *see also*, *In re Urbina*, 519 B.R. 694, 697 (Bankr. N.D. Ohio 2014). In analyzing the third basis for nondischargeability, "actual fraud," the *McClellan* court held that §523(a)(2)(A) was not limited to fraudulent misrepresentation. "[B]y distinguishing between 'a false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). *McClellan* acknowledges that numerous cases have assumed "that 'actual fraud' involves a misrepresentation." *Id.* But, a restrictive definition is not required, because actual fraud encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* (*citing,* 4 Lawrence P. King, Collier on Bankruptcy ¶ 523.08[1][e], at 523-45 (15th ed. Rev. 2000)). The *McClellan* court continued:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

*Id.* (*quoting*, *Stapleton v. Holt*, 207 Okla. 443, 250 P.2d 451, 453-54 (1952)).

> Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some

7

> legal right, and which accomplishes the end designed. It requires intent to deceive or defraud.

*Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)(*quoting*, *United States v. Lichota*, 351 F.2d 81, 90 (6th Cir. 1965)).

In *Vitanovich*, the Sixth Circuit Bankruptcy Appellate Panel adopted the Court of Appeals for the Seventh Circuit's position in *McClellan,* 217. F.3d at 893, that actual fraud as used in the statute is not limited to misleading omissions and misrepresentations[4]. "When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001).

This is consistent with the *Rembert* decision, which held that a debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Rembert,* 141 F.3d at 281-82. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). However, "if there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *ITT Final Servs. v. Szczepanski (In re Szczepanski),* 139 B.R. 842, 844 (Bankr. N.D. Ohio 1991).

A broken promise alone will not establish the existence of any intent to deceive. *In re Harrison*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003)(*citing, Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D. Conn. 1983)); *In re Abraham*, 247 B.R. 479, 483 (Bankr. D. Kan. 2000). Instead, the existence of fraudulent intent under §523(a)(2)(A) hinges on whether the debtor, at the time the debt in question is incurred, intended to honor the obligation. *Clyde-Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr. N.D. Ohio 2002). Although the intent to defraud must generally arise at the same time as the debt, the debtor's subsequent conduct may help to shed light on the debtor's state of mind at the time of the transaction. *Williamson v. Busconi*, 87

---

[4] Recent case law has continued the split on this issue. *Compare*, *In re Ritz*, 787 F.3d 312 (5th Cir. 2015)(a representation is a necessary prerequisite for a showing of "actual fraud") *with*, *In re Lawson*, ___ F.3d ___, 2015 WL 3982395, 2015 U.S. App. LEXIS 11366 (1st Cir. July 1, 2015)("Actual fraud" under fraud discharge exception is not limited to fraud effected by misrepresentation). The broader approach of *McClellan*, *Vitanovich* and *Lawson* would be to the benefit of Plaintiff.

8

F.3d 602, 603 (1st Cir. 1996).

Plaintiff alleges in his Complaint and Motion that the debt cannot be discharged, because Defendant obtained the home and the services to move the home "under false pretenses, false representation and/or actual fraud because he had no ability or intention to pay the contract between the parties." [Doc. # 1, ¶ 21; Doc. # 16, p. 6]. Plaintiff argues that the transfer of the Property from Defendant to Hunter and back to Defendant, which Plaintiff believes was for the sole purpose of avoiding the judgment lien, is evidence that Defendant never intended to fulfill his duties under the contract.

However, Plaintiff has not provided the court with any evidence or proof (beyond mere allegations) that satisfy the first requirement of *Rembert*; that 1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth.

Unquestionably, Defendant obtained property and services from Plaintiff, but there is no evidence contained within the pleadings or the Motion, that Defendant obtained them through either an express or implied material misrepresentation. Also, when looking at Defendant's subsequent conduct, it does not appear that Defendant did not intend to fulfill his duties under the contract, as he paid Plaintiff a sum of $7,000.00, in addition to purchasing $5,541.93 worth of permits and services from third-parties.

For the foregoing reasons, viewing the evidence in the light most favorable to Defendant, the court will deny summary judgment on Plaintiff's §523(a)(2)(A) claim.

### C. Claim Two: Exception to Discharge pursuant to 11 U.S.C. §523(a)(6)

Plaintiff's second claim seeks a determination that the debt owed to him by Defendant in connection with the breach of contract and the events leading up to and following the sale and moving of the house should be held nondischargeable under 11 U.S.C. §523(a)(6). Exceptions to the discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010).

This provision excepts from discharge any debt caused by a debtor's willful and malicious conduct, providing:

9

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

\* \* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In order to be entitled to a judgment that the debt is excepted from discharge, Plaintiff must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-802 (Bankr. N.D. Ohio 2001). The "debt" arising from the injury must also be one that is not subject to a valid defense. *See*, *Niedert v. Rieger*, 200 F.2d 522 (7th Cir. 1999); *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450–51(2007)("state law governs the substance of claims. . ."); *In re Underwood*, 2013 WL 4874341, 2013 Bankr. LEXIS 3789 (Bankr. N.D. Ala. Sept. 12, 2013).

In meeting this burden, the terms "willful" and "malicious" as used in §523(a)(6) are distinct concepts, with Plaintiff needing to establish the existence of both elements to prevail on a claim of nondischargeability. *Markowitz*, 190 F.3d at 463 (6th Cir. 1999). Addressing the "willful" requirement of §523(a)(6), the Supreme Court stated that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)(emphasis in original). Thus, willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (*citing Markowitz*, 190 F.3d at 464). Under §523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

The requirement of maliciousness is met when a party demonstrates that (1) the defendant-debtor has committed a wrongful act, (2) the defendant-debtor undertook the act intentionally, (3)

10

the act necessarily causes injury, and (4) there is no just cause or excuse for the action. *Vulcan Coals, Inc. V. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991); *see also, Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001).

In Count Two of Plaintiff's Complaint, Plaintiff incorporates paragraphs 1-22 "by reference herein" and contends that Defendant committed the acts detailed in the aforementioned paragraphs "willfully and/or maliciously in order to injure [Plaintiff] and convert his property." [Doc. # 1, ¶¶ 23-24]. In his Motion, Plaintiff focuses his §523(a)(6) claim on what occurred with regards to the steel beams. Plaintiff states that he supplied Defendant with the steel beams that would "assist in placing the home onto its foundation" [Doc. # 16, p. 6], and that Defendant later cut up the beams and sold them. The state court granted Plaintiff $4,000 in compensation for Defendant having sold the beams. [Doc. # 16, p. 17].

Defendant contends that he paid for the steel beams "and could therefore do whatever he wanted with them." [Doc. # 13]. To evidence that he owned the steel beams, Defendant swears in his affidavit that the Erie County grand jury did not indict him, because the steel beams were his. [Doc. # 13, p. 10, ¶11]. The Erie County grand jury's failure to indict is not persuasive on the issue of the ownership of the steel beams because Defendant is collaterally estopped from contesting ownership based upon the Erie County Common Pleas Court's Findings of Fact and Conclusions of Law.

Collateral estoppel, otherwise known as issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and *necessary to the judgment*, even if decided as part of a different claim or cause of action." *Markowitz*, 190 F.3d at 463 (6th Cir. 1999)(*quoting Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992))(emphasis added)). "The purposes of collateral estoppel are to shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results." *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

Issue preclusion applies in the context of dischargeability litigation. *See, Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995)("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. §523(a).")(*citing Grogan v. Garner*, 498 U.S. at 284 n.11). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. *See also, Marrese v. Am. Acad. of Orthopaedic Surgeons*,

11

470 U.S. 373, 380 (1985)("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981)("[T]hat Congress intended the bankruptcy court to determine the final result--dischargeability or not--does not require the bankruptcy court to redetermine all the underlying facts.").

The United States Constitution's Full Faith and Credit clause, U.S. Const. art. IV, §1, is implemented by 28 U.S.C. §1738, the federal full faith and credit statute. Under 28 U.S.C. §1738, a federal court must accord a state court judgment the same preclusive effect the judgment would have in the courts of that state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. at 374; *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)*; Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999); *Bay Area Factors, Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Issue preclusion will apply to state court judgments where (1) the law of issue preclusion in the state in which the issue was litigated would preclude relitigation of such issue and (2) the issue was fully and fairly litigated in state court. *In re Markowitz*, 973 F.2d at 461. Here, the court must apply Ohio issue preclusion principles to the state court proceedings.

Under Ohio law, four elements must be met in order to apply the doctrine of issue preclusion: "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit." *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 814 (1993)(*quoting Monahan v. Eagle Picher Indus., Inc*., 21 Ohio App.3d 179, 180-81 (1984)); *see, Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *cf. Stale ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St. 3d 386, 392, 899 N.E.2d 975, 982 (2008)(*citing Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917 (1994)(doctrine stated as having three factors, applying "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.")).

In the case at hand, the court finds that with regards to ownership of the steel beams, each of the four elements of collateral estoppel is met. Defendant was a party in the start court action,

and there was a final judgment on the merits after a trial was held. [Doc. # 3, p. 5]. It is clear that the issue of ownership of the beams was actually decided and was necessary to the final judgment, as the state court found that "both parties acknowledge[d] that there were beams that belong[ed] to the Plaintiff that he was unable to retrieve", and Plaintiff was awarded compensation for the beams in the amount of $4,000 based on his testimony as to their value. [*Id.* at p. 7; Doc. # 16, Pl. Ex. E]. Finally, the issue of ownership of the steel beams in the case at hand is identical to the issue in the state court proceeding.

However, Defendant's ownership of the steel beams is not dispositive with regards to Plaintiff's §523(a)(6) claim, as there must also be proof that the action is "willful and malicious" under the statute. Even with a state court judgment based upon conversion, the Seventh Circuit held that the debtor could present evidence, and prevail on the issue of "willfulness" despite creditor's assertion that collateral estoppel applied. *See*, *First Weber Group v. Horsfall*, 738 F.3d 767, 775 (7th Cir. 2013); *In re Juma*, 530 B.R. 682, 694 (Bankr. N.D. Ill. 2015)(collateral estoppel did not preclude debtor presenting evidence that his actions were not "malicious"); *see also*, *Morris v. Brown (In re Brown)*, 489 Fed. Appx. 890 (6th Cir. July 23, 2012)(unpublished). Thus, in Plaintiff's Complaint and Motion he has not met the specific requirements set forth by the *Kawaauhau* court. His claims and allegations have not proven, when viewed in the light most favorable to Defendant, the existence of both a deliberate or intentional act and a deliberate or intentional injury for purposes of *Kawaauhau*.

Therefore, the court will deny summary judgment on Plaintiff's §523(a)(6) claim.

### III. Defendant's Motion for Summary Judgment on Plaintiff's Claims

Defendant's Motion seeks summary judgment on each of the claims made in Plaintiff's Complaint.

#### A. Claim One: Exception to Discharge Pursuant to 11. U.S.C. §523(a)(2)

Defendant states in his Motion that "[t]here are no allegations in the Complaint involving any acts by the Defendant in obtaining Plaintiff's services . . . via fraudulent actions. In fact, the Complaint acknowledges that payments were made by Defendant. Payments ceased only when Defendant believed Plaintiff ha[d] failed to fully perform his contractual duties." [Doc. # 13, p. 4].

As stated previously in the discussion on Plaintiff's Motion, exceptions to the discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T*

13

*Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010).

Section 523(a)(2)(A)[5] excepts from discharge a debt "for money, property, [or] services. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." In order to except a debt from discharge under this section due to false pretense, false representation, or actual fraud, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Plaintiff contends that Defendant had no ability or intention to pay on the contract between the parties, whereas Defendant argues that payment on the contract stopped when he believed Plaintiff was in breach of the contract. Other than Plaintiff's bare allegation that Defendant never intended to perform under the contract at the time it was made, there is no basis for the court to find that Defendant made any material misrepresentation, whether express or implied. Further, there is no evidence that Defendant ever intended to deceive the creditor/Plaintiff in connection with the contract. Without any demonstration of an intent to deceive, proof of a breach of contract does not support a Section 523(a)(2)(A) finding.

> A bare promise to be fulfilled in the future, which is not carried out, does not render a consequent debt nondischargeable under §523(a)(2)(A). *Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 486 (Bankr.S.D.N.Y.1987). An unfulfilled promise to perform in the future is actionable only in contract. It is insufficient under §523(a)(2)(A) simply to show that debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a nondischargeable debt under §523(a)(2)(A). A fraudulent promise under §523(a)(2)(A) requires proof that at the time the debtor made it, he or she did not intend to perform as required. *Seepes v. Schwartz (In re Schwartz),* 45 B.R. 354, 357 (S.D.N.Y.1985). In other words, Plaintiff herein must establish that Defendant had no intention of repaying when he obtained the loan and she has failed to do so. We

---

[5]/ *See supra,* note 3.

14

recognize that fraudulent intent, intent to deceive or scienter can be inferred, since direct proof of state of mind is rarely available. Plaintiff, however, errs in assuming fraudulent intent can be presumed. Fraudulent intent may be inferred; it cannot be presumed.

*In re Balzano*, 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991).

In this case, Defendant's actions show, at the time the parties entered into the agreement, an intent to perform under the contract. Defendant paid Plaintiff a $4,000 down payment, and later an additional $3,000 was paid. The state court's Findings of Fact and Conclusions of Law also show that Defendant spent $5,541.93 in charges that "were part of the original contract and were not completed by the Plaintiff." [Doc. # 16, p. 17].

In contrast, Plaintiff (who would bear the burden of proof at trial) has not set forth specific facts showing that there is a genuine issue for trial through any significant probative evidence to support the allegation of fraud. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

It is for the foregoing reasons that the court will grant summary judgment in favor of Defendant on Plaintiff's claim under 11. U.S.C. §523(a)(2).

**B. Claim Two: Exception to Discharge Pursuant to 11 U.S.C. §523(a)(6)**

As previously set forth in this decision, in the discussion on Plaintiff's Motion for Summary Judgment on this claim, Plaintiff asserts that Defendant committed the acts detailed in paragraphs 1-22 of the Complaint "willfully and/or maliciously in order to injure [Plaintiff] and convert his property." [Doc. # 1, ¶¶ 23-24]. In his Motion, Plaintiff focuses his §523(a)(6) claim on what occurred with regards to the steel beams. Plaintiff states that he supplied Defendant with the steel beams that would "assist in placing the home onto its foundation" [Doc. # 16, p. 6], and that Defendant later cut up the beams and sold them. The state court later granted Plaintiff $4,000 in compensation for Defendant having sold the beams. [Doc. # 16, p. 17].

Defendant contends that he paid for the steel beams "and could therefore do whatever he wanted with them." [Doc. # 13]. To evidence that he owned the steel beams, Defendant avers in his affidavit that the Erie County grand jury did not indict him, because the steel beams were his. [Doc. # 13, p. 10, ¶11]. As previously stated, the Erie Country grand jury's failure to indict is not persuasive on the issue of the ownership of the steel beams, because Defendant is collaterally

estopped from contesting ownership based upon the Erie County Common Pleas Court's Findings of Fact and Conclusions of Law.

The record before the court establishes that Plaintiff owned the steel beams, and pursuant to the state court's findings, Defendant is collaterally estopped from arguing otherwise. Therefore, the court cannot grant summary judgment in favor of Defendant, as his only argument in favor of summary judgment on this claim is that he owned the steel beams and "could therefore do whatever he wanted with them." [Doc. # 13, p. 4]. Moreover, Defendant's contention that the failure of the grand jury to indict him with theft being indicative of a lack of willful and malicious conduct is not well-taken, because there has been no evidence presented regarding the reasons that the criminal grand jury decided not to indict[6].

For the foregoing reasons, the court will deny Defendant's Motion for Summary Judgment on Plaintiff's §523(a)(6) claim.

### C. Claim Three: Exception to Discharge Pursuant to 11. U.S.C. §523(a)(11)

Plaintiff asserts in the Complaint that the debt owed to him by Defendant should be excepted from Defendant's discharge because it is "provided in a final judgment, unreviewable order, or consent order or decree entered in any court of the United States . . . ." [Doc. # 1, ¶ 27].

Section 523(a)(11) excepts from discharge any debt caused by a debtor's willful and malicious conduct under specific circumstances:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union[.]

The phrase "fraud or defalcation while acting in a fiduciary capacity" is also found in 11 U.S.C. §523(a)(4). However, there are differences between the two provisions. In §523(a)(4), a

---

[6]/ The court also notes that a criminal conviction would require proof beyond a reasonable doubt, while this civil action only requires proof by a preponderance of the evidence.

16

nondischargeability claim is subject to the time limitations imposed by §523(c), whereas a claim under §523(a)(11) is not. Nor is a claim for nondischargeability under §523(a)(11) subject to the exclusive jurisdiction of the bankruptcy court. *See,* 4 Collier on Bankruptcy, ¶523.17 at 523-119 (16th ed. 2015). Further, §523(a)(11) has a narrower scope than §523(a)(4), as (a)(11) only applies to actions "committed with respect to any depository institution or insured credit union" and not with respect to individual debtors. *Bankers Trust Co. v. Hoover (In re Hoover)*, 301 B.R. 38 (Bankr. D. Iowa 2003); *see generally, Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994).

As a basis for excepting the debt from Defendant's discharge pursuant to §523(a)(11), Plaintiff only alleges that the debt owed to him by Defendant has been provided for in a certificate of judgment [Doc. # 1, ¶ 27; Doc. # 3, Ex. A]. The court agrees with Defendant's statement that "[t]his Section has no applicability in this case since Defendant has not been a fiduciary for a depository institution or insured credit union." Plaintiff has neither alleged nor provided evidence to the court of a necessary element: that the debt arose from any act of fraud or defalcation while Defendant acted in a fiduciary capacity with respect to any depository institution or insured credit union. In contrast, Defendant has submitted an affidavit stating that he is not, nor has he ever been, a fiduciary for a depository institution, [Doc. # 13, p. 10, ¶ 17].

Accordingly, the court will grant summary judgment in favor of Defendant on Plaintiff's §523(a)(11) claim.

### D. Claim Four: Exception to Discharge Pursuant to 11 U.S.C. §727(a)(2), (4) & (5)

Finally, Defendant moves for summary judgment on the allegations made under Claim Four of Plaintiff's Complaint. A plaintiff must prove exceptions to dischargeability and the elements of a §727(a) claim objecting to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991); *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); Fed. R. Bankr. P. 4005. The provisions of §727(a) are to be strictly construed against the creditor and liberally in favor of the debtor. *Keeney,* 227 F.3d at 683; *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

11 U.S.C. §727(a)(2) provides that:

(a) The court shall grant the debtor a discharge unless–

. . .

(2) the debtor, with intent to hinder, delay, or defraud a

17

creditor or an officer of the estate charged with custody of
property under this title, has transferred, removed, destroyed,
mutilated, or concealed, or has permitted to be transferred,
removed, destroyed, mutilated or concealed--

. . .

> (A) property of the debtor, within one year before the date of
> the filing of the petition; or
> (B) property of the estate, after the date of the filing of the
> petition.

Plaintiff does not state in his Complaint which specific transfer of property he refers when he references §727(a)(2).[7] Moreover, there were no allegations of continuing concealment or the retention of a "secret interest" by the Debtor.

Defendant contends that the transfer of the property in question, from himself to his Father, occurred "significantly more than [one] year prior to the Debtor's bankruptcy filing of June 25, 2014." [Doc. # 13, p. 5]. If Plaintiff is referring to the steel beams that Defendant sold, the record shows that the sale of the beams occurred prior to the state court's judgment signed on March 27, 2013. [Doc. # 3, p. 3]. The record further shows that Defendant quitclaimed title of the property to his father on December 11, 2012. [Doc. # 16]. The deed was recorded on December 12, 2012. Defendant filed his petition on June 25, 2014 [Case No. 14-32350, Doc. # 1], more than eighteen months after the property was transferred to his Father.

There is no evidence before the court that Defendant/Debtor "transferred, removed or concealed, or permitted such acts, property of the Debtor within one (1) year before the filing of the petition" on June 25, 2014 [Doc. # 1, ¶ 30]. Thus, Plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Finally, if Plaintiff were seeking to deny discharge based upon the transfer of property back to the Debtor[8], which was not specifically pleaded nor supported by the proffering of evidence, it

---

[4]/  As there has been no alleged transfer of property after the date Defendant filed his petition, the court will focus on a claim under §727(a)(2)(A).

[8]/ There is nothing in the pleadings, nor in Plaintiff's proffered evidence, regarding how a transfer of property to the Debtor could fit within §727(a)(2)(A)'s requirement that the transfer be "property of the debtor." As noted in *In re Vallani*, 478 B.R. 51, 59 (1st Cir. BAP 2012): "Objections to discharge should be narrowly construed

is doubtful that a discharge could be denied on such a theory. While the legal consequences of a re-transfer of property conveyed within one year of filing is the subject of conflicting case law[9], there does not appear to be any support for the concept that a reconveyance of property transferred <u>outside</u> the one year period would somehow "revive" a basis for denial of discharge that had been extinguished by the passage of time.

Accordingly, for all of the reasons stated above, the court will grant Summary Judgment in favor of Defendant on Plaintiff's §727(a)(2) claim.

Plaintiff's §727(a)(4) claim contends that Defendant made a false oath or account "and/or withheld information from the Trustee and his creditors. . . regarding his assets." [Doc. # 1, ¶ 31]. Under §727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[,]" and under §727(a)(4)(D), a discharge is denied if a debtor "withheld from an officer of the estate entitled to possession . . . any recorded information . . . relating to the debtor's property or financial affairs."

A prerequisite to the privilege of discharge is complete financial disclosure. *Keeney*, 227 F.3d at 685. Thus, under §727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" In order to prevail, a plaintiff must prove, by a preponderance of the evidence that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Id.* at 685. The Sixth Circuit explained fraudulent intent as contemplated under this section as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.*

---

in furtherance of the Bankruptcy Code's fresh start policy and the claimant must show that its claim comes squarely within an objection enumerated in Bankruptcy Code § 727(a)(2)."

[9]/ *Compare*, *In re Adeeb*, 787 F.2d 1339, 1344 (9th Cir. 1986)("transfer" in §727(a)(2)(A) means "transfer and remained transferred"); *with*, *In re Barjar*, 104 F.3d 495 (1st Cir. 1997); *In re Davis*, 911 F.2d 560 (11th Cir. 1990).

"'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

*Id.* at 685-86.   A false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Id.* at 686 (*quoting Beaubouf v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).

A debtor is under an affirmative duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . . ." 11 U.S.C. §521(a)(4).  If a debtor withholds information from an officer of an estate, the objecting party must show that he did so knowingly and fraudulently.  Therefore:

The intent required under [Section 727(a)(4)(D)] must be actual, as distinguished from constructive, intent.  *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976).  Because actual intent is difficult to prove directly, it may be established from circumstantial evidence or inferred from the debtor's conduct.

*Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 647 (Bankr. E.D. Mich. 1999).

In his Complaint, Plaintiff combines the language of Sections 727(a)(4)(A) and (a)(4)(D) in arguing against granting Defendant his discharge, but he does not provide the court with any specific allegations or evidence as to what false oath or account was made.  Neither the Complaint, nor Plaintiff's Response to Defendant's Motion for Summary Judgment, set forth any specific false statement that was made, nor has Plaintiff provided the court with any evidence - even circumstantial evidence - of fraudulent intent.  Defendant correctly states that "[t]here is no specific allegation in the Complaint." [Doc. # 13, p. 5].  Further, Defendant points out that neither the Chapter 7 Trustee, the U.S. Trustee, nor any other officer of the estate have made any such allegations under §727(a)(4)(A) and (a)(4)(D).

Therefore, the court will grant summary judgment in favor of Defendant on Plaintiff's §727(a)(4)(A) and (a)(4)(D) claims.

Lastly, Plaintiff posits that Defendant has "failed to explain satisfactorily the loss or deficiency of his assets," and as such, should be denied a discharge under §727(a)(5). [Doc. # 1, ¶ 32].   As with Plaintiff's §727(a)(4)(A) and (a)(4)(D) claims, Defendant asserts that Plaintiff has

provided no specificity regarding which assets Plaintiff claims have been lost or diminished. The court finds that there is no evidence on the record that would, even when viewed in the light most favorable to the Plaintiff, support a §727(a)(5) claim by a preponderance of the evidence.

Accordingly, summary judgment in favor of Defendant on Plaintiff's §727(a)(5) claim will be granted.

## CONCLUSION

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 23] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's Combined Motion for Summary Judgment and Memorandum Contra to Plaintiffs' Motion [Doc. # 24] be, and hereby is, **GRANTED** in part as to Plaintiff's claims brought pursuant to 11 U.S.C. §523(a)(2), §523(a)(11), §727(a)(2), §727(a)(4), and §727(a)(5) (Counts One, Three, and Four) and **DENIED** in part as to Plaintiff's §523(a)(6) claim (Count Two); and

**IT IS FINALLY ORDERED** that a further pretrial conference will be set by separate scheduling order of the court.

###

21